IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| POWER RESOURCE GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO.  A-03-CA-762-H |
| | § | |
| REBECCA KLEIN, In Her Official | § | |
| Capacity as Chairman of the | § | |
| Public Utility Commission of | § | |
| Texas, JULIE PARSLEY, In Her | § | |
| Official Capacity as | § | |
| Commissioner of the Public | § | |
| Utility Commission of Texas, | § | |
| PAUL HUDSON, In His Official | § | |
| Capacity as Commissioner of the | § | |
| Public Utility Commission of | § | |
| Texas and TEXAS NEW MEXICO | § | |
| POWER COMPANY, | § | |
| | § | |
| Defendants. | § | |

**O R D E R**

On this day came on to be considered Defendants Rebecca
Klein[1], Julie Parsley and Paul Hudson's (collectively
"Commissioners") motion to dismiss amended complaint (Clerk's Dkt.
#15) and Intervenor Texas New Mexico Power Company's ("TNMP")
motion to dismiss (Clerk's Dkt. #11) in the above-styled and
numbered cause.  This case arises out of allegations brought by
Power Resource Group, Inc. ("PRG") that the Commissioners violated
the Public Utilities Regulatory Policy Act of 1978 ("PURPA") by
failing to pass regulations which fully implemented the federal

---

[1]Commissioner Klein has resigned as Chairman of the Public
Utility Commission of Texas, effective January 16, 2004.  Thus,
her successor will automatically be substituted as a party.  FED.
R. CIV. P. 25(d)(1).

statute.

"PURPA was enacted as part of an effort to combat the nationwide energy crisis by reducing the dependence of electric utilities on foreign oil and natural gas." Pl.'s Compl. ¶7. Part of PURPA encouraged the development of alternative energy sources such as cogeneration and small power production facilities. Facilities which qualified for the PURPA's protections and benefits are termed "qualifying facilities" or "QF's."

PURPA directed the Federal Energy Regulatory Commission ("FERC") to adopt regulations that would promote energy purchase from QF's. State regulatory agencies were then directed to adopt rules which complied with FERC's requirements and which fully implemented PURPA in each state. 16 U.S.C. § 824a-3(f). The Texas rule at issue here controls when a utility must purchase power from a QF, rather than producing the power itself or purchasing it from an alternative source, and PRG avers that the Texas rule fails to fully implement FERC regulations and does not meet the demands of PURPA.

## I. FACTS AND PROCEDURAL HISTORY

PRG is a Delaware corporation and is an experienced developer of independent power projects. TNMP is a Texas electric utility under the authority of the Texas Public Utility Commission ("PUC"). Prior to the events at issue, TNMP purchased power from Texas Utilities Electric Company ("TUEC") under a long-term contract. In

1995, TNMP distributed a Request for Proposal for energy capacity to fill the need anticipated for 1999 or 2000.  Pl.'s Compl. ¶29. In response, PRG proposed to construct a natural gas-fired combined cycle power generation facility to be located in Lewisville, Texas - the Lewisville Power Project ("LPP" or "Lewisville Project"). The parties entered negotiations in March of 1996 related to various options to displace a 265 megawatt portion of TNMP's then-current purchase obligation from TUEC.  The Lewisville Project was certified as a "QF" on September 20, 1996 pursuant to 18 C.F.R. § 292.207(a)(1),  certification  number  QF  96-120-000.    While negotiations were on-going, PRG secured sources of equity, identified a site and equipment, negotiated a site option and fuel supply options, negotiated purchase and thermal host agreements, held zoning discussions, engaged an engineering firm, and assessed environmental permitting. Pl.'s Compl. ¶35. After several earlier proposed contracts, PRG made its final written commitment in the form of a signed contract on February 13, 1998.  TNMP refused to execute any contract and, instead, renegotiated with TUEC at a higher rate than was offered by PRG.

On August 7, 1998, PRG filed a petition with the Texas PUC asking the PUC to order TNMP to contract with PRG for the purchase of power from the Lewisville Project or to grant relief appropriate to enforce those rights and to require TNMP to purchase power from the Lewisville Project.  Under the applicable rule - at that time P.U.C. Subst. R. 23.66(d), currently codified at P.U.C. Subst. R.

25.242(f)(1)(B) - as interpreted by the Texas PUC, utilities were required to purchase from a QF only if the QF could deliver power within 90 days of notifying the utility that energy would be available.  On March 25, 1999, the Texas PUC dismissed PRG's petition without prejudice stating, "TNMP is not obligated under PUC SUBST. R. 23.66 to contract with PRG to purchase power and capacity from LPP, because PRG could not deliver power or capacity from LPP to TNMP within 90 days after PRG's final offer on January 2, 1998."  Order of Mar. 25, 1999, PUC Docket No. 19715, Intervenor's Mot. to Dismiss Ex. A.  PRG sought judicial review of the PUC's order in the 345th Judicial District Court of Travis County, Texas.

The Texas District Court affirmed the final order of the PUC on March 8, 2001, stating, "The Court, at the conclusion of the hearing, after reviewing the pleadings, the administrative record, briefs and having heard the arguments of counsel, finds that agency order under review in this cause should be in all things affirmed."  **Power Res. Group, Inc. v. Pub. Util. Comm'n of Tex.**, No. 99-06000 at 1 (Tex. Dist. Ct., 345th Jud. Div. Mar. 8, 2001).  PRG promptly appealed the ruling to the Court of Appeals for the Third District of Texas, at Austin.  On January 10, 2002, the Texas Court of Appeals affirmed both the Texas District Court and the PUC stating that "the Commission's interpretation of rule 23.66(d) is reasonable and not preempted by federal law and that the Commission

4

did not act arbitrarily or capriciously in refusing to compel TNMP to contract with Power Resource." **Power Res. Group, Inc. v. Pub. Util. Comm'n of Tex.**, 73 S.W.3d 354, 363 (Tex. App.-Austin 2002). PRG then petitioned for review by the Texas Supreme Court, and that petition was denied on October 10, 2002.

Subsequently, PRG petitioned FERC pursuant to PURPA section 210(h)(2)(B) and requested that FERC undertake an enforcement action against the Texas PUC for its failure to implement the full regulatory scheme required under PURPA. 16 U.S.C. § 824a-3(h)(2)(B). After sixty days, FERC had still not acted on PRG's petition. On October 20, 2003, PRG filed the instant complaint in this Court as authorized under section 210(h)(2)(B).

In its complaint, PRG argues that once FERC has declined to bring an enforcement action, section 210(h)(2)(B) gives federal district courts exclusive jurisdiction over the question of proper state implementation of PURPA. The Commissioners and TNMP, in their motions to dismiss, argue that by pursuing a remedy in state court for the PUC's failure to implement PURPA, PRG is barred from seeking review in federal court. The Commissioners and TNMP argue that, once the Texas PUC construed Texas rule 23.66 in its administrative hearing, PRG had a final construction of the rule which could be the subject of a claim under section 824a-3(h)(2)(B), but that PRG chose instead to pursue its claim in the state courts. Specifically, the motions to dismiss present four

distinct arguments: (1) the Rooker-Feldman doctrine bars review of this claim in federal district court because proper review of PRG's federal question was available via a petition for certiorari to the U.S. Supreme Court; (2) because the Texas state courts have decided the issues presented in the instant case, the doctrines of res judicata and/or collateral estoppel bar these same claims in federal court; (3) PRG has no standing under section 210(h)(2)(B) because it is not a "qualifying cogenerator, or qualifying small power producer" under the statute; and (4) sovereign immunity bars pursuit of this claim in federal court.  In response, PRG argues that the Rooker-Feldman, res judicata and collateral estoppel arguments are inapplicable here because the federal courts have exclusive jurisdiction.  Additionally, PRG states that, as a certified QF, it does have standing to bring this action and that the prospective injunctive relief requested does not run afoul of sovereign immunity.

## II. STANDARD OF REVIEW

The strict standard of review under Rule 12(b)(6)[2] has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved

---

[2]While Intervenor TNMP clearly brings its motion to dismiss under FED. R. CIV. P. 12(b)(6), Defendant Commissioners have simply filed their motion "pursuant to Rule 12 of the Federal Rules of Civil Procedure."  Mot. to Dismiss 1 (Clerk's Dkt. #14). The Court will treat this as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).

in his behalf, the complaint states any valid claim for relief."
5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (2d Ed.
1969); **Lowrey v. Tex. A & M Univ. Sys.**, 117 F.3d 242, 247 (5th Cir.
1997).  In making this examination, the district court may not go
outside the pleadings and must accept all well-pleaded facts as
true, viewing them in a light most favorable to the Plaintiffs.
**Partridge v. Two Unknown Officers**, 791 F.2d 1182, 1185-86 (5th Cir.
1986); **O'Quinn v. Manuel**, 773 F.2d 605, 608 (5th Cir. 1985).
Ultimately, the district court may not dismiss a complaint under
Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim which would
entitle him to relief."  **Conley v. Gibson**, 355 U.S. 41, 45-46
(1957).  **See also Worsham v. City of Pasadena**, 881 F.2d 1336, 1339
(5th Cir. 1989); **Elliott v. Foufas**, 867 F.2d 877, 880 (5th Cir.
1989).

### III. DISCUSSION

<u>Effect of Exclusive Federal Jurisdiction on Rooker-
Feldman, Res Judicata & Collateral Estoppel Arguments</u>

Under the Rooker-Feldman doctrine, a losing party in state
court is "barred from seeking what in substance would be appellate
review of the state judgment in a United States district court,
based on the losing party's claim that the state judgment itself
violates the loser's federal rights."  **Johnson v. De Grandy**, 512
U.S. 997, 1005 (1994) (citing **D.C. Court of Appeals v. Feldman**, 460

U.S. 462, 482 (1983); **Rooker v. Fid. Trust Co.**, 263 U.S. 413, 416
(1923)).  The Rooker-Feldman doctrine thus recognizes that a grant
of original jurisdiction in the federal courts "does not authorize
district courts to exercise appellate jurisdiction over state-court
judgments, which Congress has reserved to [the U.S. Supreme] Court,
see 28 U.S.C. § 1257(a)." **Verizon Md., Inc. v. Pub. Serv. Comm'n
of Md.**, 535 U.S. 635, 644 (2002).  However, where the federal
courts have exclusive jurisdiction, as PRG argues is true in this
case, the Rooker-Feldman doctrine does not apply and the federal
forum will hear the matter in the first instance, not in an
appellate capacity.

    The full faith and credit statute requires a federal district
court, applying the doctrines of res judicata and collateral
estoppel, to give state court judgments the same preclusive effect
they would have in the rendering state.  28 U.S.C. § 1738, **Marrese
v. Am. Acad. of Orthopaedic Surgeons**, 470 U.S. 373, 380 (1985).  In
Texas, res judicata precludes relitigation of all issues in a cause
of action where: (1) there has been a prior final judgment on the
merits by a court of competent jurisdiction; (2) there is an
identity of parties or those in privity with them; and (3) the
second action is based on the same claims that either were raised,
or could have been raised, in the first action.  **Amstadt v. U.S.
Brass Corp.**, 919 S.W.2d 816, 819 (Tex. 1996).  The first factor is
the most crucial in this case.  If jurisdiction over PRG's instant

claim is exclusively federal, then the Texas state courts would not be courts of competent jurisdiction, and their determinations would not be preclusive. **Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.**, 83 F. Supp. 2d 781, 790 (E.D. Tex. 2000).

Collateral estoppel is slightly narrower than res judicata in that the doctrine will bar relitigation of any issue actually litigated and essential to the judgment, rather than operating to bar an entire action. **See Bonniwell v. Beach Aircraft Corp.**, 663 S.W.2d 816, 819 (Tex. 1984). Collateral estoppel will bar relitigation of an ultimate issue of fact: (1) if the facts to be litigated in the second action were "fully and fairly litigated in the prior action;" (2) if the facts previously litigated were essential to the judgment in the first action; and (3) if the parties were cast as adversaries in the first action. **Id.** at 818. Additionally, collateral estoppel will operate to bar issues from reconsideration "irrespective of whether the claims being asserted are within the exclusive jurisdiction of the federal courts." **Piggly Wiggly**, 83 F. Supp. 2d at 793. Thus, the key issue under the collateral estoppel doctrine will be whether the facts relevant to the instant action were actually fully and fairly litigated in state court.

## A.   JURISDICTION UNDER PURPA

Under the Federal Power Act ("FPA"), FERC is responsible for regulating public utilities that offer electric power in interstate

commerce. **See Crossroads Cogeneration Corp. v. Orange & Rockland Util., Inc.**, 159 F.3d 129, 132 (3d Cir. 1998). Congress passed PURPA as part of a package of legislation[3] designed to combat the nationwide energy crisis. **See FERC v. Mississippi**, 456 U.S. 742, 742 (1982). PURPA modified the FPA as part of "Congress' overall strategy [] to 'control power generation costs and ensure long-term economic growth by reducing the nation's reliance on oil and gas and increasing the use of more abundant, domestically produced fuels.'" **Crossroads**, 159 F.3d at 132 (quoting **Freehold Cogeneration Assoc., L.P. v. Bd. of Regulatory Comm'rs of N.J.**, 44 F.3d 1178, 1182 (3d Cir. 1995)). Section 210 of PURPA was specifically designed to encourage the development of cogeneration facilities and small power production facilities. Section (a) requires FERC to prescribe rules pursuant to PURPA which encourage cogeneration and small power production. Section (f) then mandates that each State regulatory authority implement the rules proscribed by FERC for each electric utility for which it has ratemaking authority. 16 U.S.C. § 824a-3(f)(1). This flexible yet complex dual-sovereign scheme of implementation has caused considerable confusion related to enforcement of PURPA, and it is the

---

[3]**Windway Tech., Inc. v. Midland Power Coop.**, 2001 U.S. Dist. LEXIS 3430 *11 n.3 (N.D. Iowa Mar. 5, 2001) ("The legislation package also included the Energy Tax Act of 1978, Pub. L. 95-618, 92 Stat. 3174; the National Energy Conservation Policy Act, Pub. L. 95-619, 92 Stat. 3206; the Powerplant and Industrial Fuel Use Act of 1978, Pub. L. 95-620, 92 Stat. 3289; and the Natural Gas Policy Act of 1978, Pub. L. 95-621, 92 Stat. 3351.").

enforcement provisions of section 210 which are at issue in this case.

### 1.   Enforcement Provisions of PURPA

The enforcement scheme enacted under PURPA is multi-layered. The type of claim brought by the petitioner will determine whether state court, the FERC or federal district court is the appropriate forum under the statute.  Section 210(g) provides for state court review of state rules and regulations promulgated by state regulatory authorities to implement PURPA and permits state court actions to enforce the requirements set out by state regulatory authorities. **Windway**, 2001 U.S. Dist. LEXIS 3430 at *14.  "Section 210(h)(1) provides that for enforcement purposes, rules and regulations promulgated pursuant to PURPA shall be treated like the Federal Power Act ("FPA") rules, which are enforceable by FERC in federal district court."  **Id.** at *15.   Finally, section 210(h)(2)(B) allows any "electric utility, qualifying cogenerator, or qualifying small power producer" to petition FERC to bring an enforcement action against a state regulatory authority.  If FERC declines to pursue such an enforcement action within 60 days following the date the petition was filed, the petitioner is authorized under section 210(h)(2)(B) to "bring an action in the appropriate United States district court to require such State regulatory authority ... to comply with such requirements."  16 U.S.C. § 824a-3(h)(2)(B).

While the enforcement scheme is admittedly complex, it is clear that jurisdiction of the federal district court is only appropriate if two conditions are met. First, a party must petition FERC to bring an enforcement action prior to filing suit in federal court. Failure to pursue this administrative remedy is fatal to a claim in federal district court under section 210(h)(2)(B). **See e.g., Niagara Mohawk Power Corp. v. FERC**, 306 F.3d 1264, 1267 (2d Cir. 2002). Second, the issue presented to the federal court must be one which challenges the state regulations as an illegal implementation of PURPA and the FERC regulations. The federal courts do not have jurisdiction to hear a petitioner's claim that a state rule is illegal under PURPA "as applied" by the state regulatory authority - that question is strictly the province of the state courts. **See Indus. Cogenerators v. FERC**, 47 F.3d 1231, 1234 (D.C. Cir. 1995), **Mass. Inst. of Tech. (MIT) v. Mass. Dep't of Pub. Utils.**, 941 F. Supp. 233, 236 (D. Mass 1996), **Greensboro Lumber Co. v. Ga. Power Co.**, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986). "An implementation claim involves a contention that the state agency ... has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA, whereas an 'as applied' claim involves a contention that the state agency's ... implementation plan is unlawful, as it applies to or affects an individual petitioner." **Windway**, 2001 U.S. Dist. LEXIS 3430 at *17 (citing **MIT**, 941 F. Supp. at 237; **Greensboro Lumber**, 64 F. Supp. at

1374).

Once it is determined that a petitioner has averred an implementation claim, however, federal jurisdiction is exclusive. **Indus. Cogenerators**, 47 F.3d at 1235-36 ("Congress created in § 210 a complete and independent scheme by which the purposes of PURPA are to be realized.  That scheme involves the promulgation of regulations by FERC, and their subsequent enforcement **exclusively in federal district court**, at the insistence of either a private party or of the FERC itself.") (emphasis added).  It is clear that section 210 creates an enforcement scheme by which either FERC or a private party may see to it that a state regulatory agency complies with PURPA, and "[i]n either event, the enforcement action must be brought in federal district court." **Id.** at 1234 (citing 16 U.S.C. §§ 824a-3(h)(1), (2)(A)).

Jurisdiction for enforcement actions lies exclusively with the federal courts due to language in PURPA stating that, for the purpose of enforcement, a rule implementing PURPA "shall be treated as a rule under the Federal Power Act."  16 U.S.C. § 824a-3(h)(1). Jurisdiction under the FPA is clear: "The District Courts of the United States ... shall have exclusive jurisdiction of violations of this Act or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty."  16 U.S.C. § 825p.

13

**B.   PRG'S CLAIM**

   1.   FERC Petition for Enforcement Action

As stated, a party must petition FERC to bring an enforcement action before properly bringing its own claim in federal district court.  In the instant matter, PRG did petition FERC, asking it to bring an action against the Texas PUC for failure to properly implement PURPA.  Specifically, PRG argued that the Texas PUC had failed to implement PURPA by adopting rules which did not fully effectuate the Legally Enforceable Obligation provision of the FERC regulations.  FERC did not pursue an enforcement action, and PRG filed the instant matter in this Court pursuant to section 210(h)(2)(B).  16 U.S.C. § 824a-3(h)(2)(B).  Thus, PRG has fully exhausted its administrative remedy with FERC as required under PURPA.

   2.   Is PRG's Action An "Implementation" Claim?

Courts faced with determining jurisdiction under section 210(h) of PURPA have distinguished between claims challenging the implementation of FERC regulations and/or state regulations and claims challenging the application of such regulations.  **See e.g.**, **Indus. Cogenerators**, 47 F.3d at 1235, **Windway**, 2001 U.S. Dist. LEXIS 3430 at *18, **MIT**, 941 F. Supp. at 236, **Greensboro Lumber**, 643 F. Supp. at 1374-75.  In this context, the federal court has jurisdiction to force a state to implement QF regulations under PURPA if the state regulatory authority has failed to do so, but

not to settle disputes about how a state-approved rate or regulation might apply to an individual QF. **See Windway**, 2001 U.S. Dist. LEXIS 3430 at *20.  Paragraph one of PRG's complaint states that it "seeks review against the Texas PUC for its failure to implement a critical and necessary component of PURPA, as required under Section 210(f) of PURPA, 16 U.S.C. § 824a-3(f)."  Pl.'s Compl. ¶ 1.  Looking at the substance of Plaintiff's complaint, the specific failure PRG is alleging is a failure by the Texas PUC to implement the Legally Enforceable Obligation provision of PURPA in addition to the Time Of Delivery provision, which PRG concedes was properly implemented.  Thus, from the face of the complaint, Plaintiff has stated a cause of action - purely to enforce the implementation requirements of section 210(f) - and because jurisdiction over this claim is exclusively federal, Defendants' motion to dismiss based on grounds that Plaintiff's claim is barred by the Rooker-Feldman and res judicata doctrines is properly denied.[4]

The collateral estoppel question is slightly more searching because the doctrine will bar issues, irrespective of exclusive

---

[4]It is critical to note here that the Defendants' and Intervenor's citation to **Metro. Edison Co.**, 72 F.E.R.C. ¶ 61,015 (July 6, 1995) as holding that the timing and creation of a "legally enforceable obligation" is a matter is state law is inapplicable to the instant implementation question.  Application of a state's legally enforceable obligation rule is a matter of state law.  However, illegal implementation of PURPA - in the form of a failure to implement a legally enforceable obligation rule which fully effectuates PURPA - is a matter of federal law.

15

federal jurisdiction, if they have been fully and fairly litigated in another forum and were essential to the judgment.[5] **Piggly Wiggly**, 83 F. Supp. 2d at 793. "An issue is 'actually litigated' for collateral estoppel purposes if it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" **Id.** In its second amended petition in state court, PRG requested that the District Court: (1) reverse and remand the Texas PUC order which dismissed PRG's complaint; (2) "enter a declaratory judgment that the PUC's application of Substantive Rule § 23.66(d)(1)(C) improperly interferes with and impairs Plaintiff's legal right"; (3) grant specific performance requiring TNMP to purchase energy; (4) award damages for breach of contract; and (5) award damages for fraud. Pl.'s Second Am. Pet., No. 99-06000, Intervenor's Mot. to Dismiss Ex. B.

While it is clear that PRG did argue that Texas rule 23.66 conflicted with PURPA, it appears equally clear that PRG presented the state court with an "as applied" claim, rather than an implementation claim. **See id.** at ¶¶ 14, 22. Application of state regulations is solely and properly the province of the state courts. **See Indus. Cogenerators**, 47 F.3d at 1234. Thus, PRG did not argue the implementation issue in the trial court and could not

---

[5]Here, the parties do not dispute that they were cast as adversaries in the state court proceedings.

have raised it for the first time on appeal.[6]  **See Piggly Wiggly**,

83 F. Supp. 2d at 793-94 ("Importantly, collateral estoppel extends

only to matters that were actually adjudicated in an earlier

lawsuit and not to matters that might have been raised. ... This is

pivotal because collateral estoppel only precludes the relitigation

of *identical* issues of fact or law that were actually litigated.")

(emphasis in original).  The issue of full PURPA implementation in

the State of Texas is, thus, yet to be fully and fairly litigated,

and collateral estoppel does not support an argument to dismiss

PRG's claim.

However, while the Plaintiff has stated one viable cause of

action, it has also included in its complaint claims which are

barred.  Thorough reading of the Plaintiff's complaint reveals that

---

[6]The Texas Court of Appeals held:
Because we hold that rule 23.66 is not preempted by
federal law and the Commission was within its authority
to determine that a legally enforceable obligation does
not exist unless the qualifying facility is capable of
providing energy within ninety days of notifying the
utility of its qualifying facility status, we overrule
Power Resource's third point of error.  Because of our
disposition on this point of error, we need not address
Power Resource's point of error one, two, four, and
five.
**Power Res. Group**, 73 S.W.3d at 361-62.  Plaintiff's point of
error three states, "Rule 23.66 was misinterpreted by the PUC or,
otherwise, Rule 23.66 violates governing law and is invalid."
Appellant, PRG's Opening Br., Intervenor's Mot. to Dismiss Ex. D.
Therefore, in ruling on point of error three exclusively, the
Texas Court of Appeal reviewed and determined an "as applied"
claim.  Moreover, in their arguments to dismiss, Defendants and
TNMP focus on points of error two and four - neither of which
resulted in a holding by the Texas Court of Appeals.

PRG also asks this Court to grant relief in the form of an order directing the Texas PUC to consider PRG's claims under a revised system of regulation - one conforming to PURPA - and that PRG claims it is entitled to relief because it "has been aggrieved ... because a legally enforceable obligation arose between PRG and TNMP."  Pl.'s Compl. ¶ 3, 60.  These allegations state an "as applied" claim, which this Court has no jurisdiction to hear.  PRG has fully litigated the ultimate questions of fact related to the proper or improper application of the Texas regulations.  PRG argued in state court that the Texas PUC misapplied the state regulations, and that PRG and TNMP had created a legally enforceable obligation.  The PUC and the Texas state courts all found that Rule 23.66 was correctly applied to PRG's situation, and that a legally enforceable obligation had not arisen.  That determination was distinctly the province of the Texas state courts.  16 U.S.C. § 824a-3(g).  This Court has no jurisdiction to review a final determination of the Texas state courts on the application issue.  Therefore, the one ultimate and limited issue before this Court is whether the Texas PUC illegally failed to fully implement PURPA.

## C.   Standing Under § 824a-3(h)(2)(B)

The Defendants argue that PRG has no standing to bring this action under section 210(h)(2)(B) of PURPA because PRG is neither a "qualifying cogenerator, or qualifying small power producer."  16

18

U.S.C. § 824a-3(h)(2)(B).  The procedure for "obtaining qualifying status" is set out in 18 C.F.R. § 292.207, which states, "A small power production facility or cogeneration facility that meets the applicable criteria established in § 292.203 is a qualifying facility."  18 C.F.R. § 292.207(a)(1)(i).  PRG was certified as a QF on September 20, 1996 pursuant to 18 C.F.R. § 292.207(a)(1), certification number QF 96-120-000.  Defendants argue that because PRG was "self-certified", it cannot show standing under section 210(h)(2)(B).  The Court disagrees and finds that PRG has standing as a QF to bring this claim.  Section 292.207 makes clear that self-certification provides full QF status, and that filing an application for FERC certification, rather than filing a self-certification, is an "Optional procedure."  18 C.F.R. § 292.207(b)(1) ("In lieu of the [self-]certification procedures in paragraph (a) of this section, an owner or operator ... may file with the Commission an application for Commission certification that the facility is a qualifying facility.").  Thus, having been certified as a QF, and having never lost that certification, PRG has standing to bring its implementation claim in this Court, and Defendants' motion to dismiss on that ground is appropriately denied.

### D.   Sovereign Immunity

As part of their motion to dismiss, the Commissioners argue that PRG's claim is barred by sovereign immunity under the Eleventh

19

Amendment.  U.S. CONST. amend. XI.  In order to preserve the dual-sovereignty system in the United States, the Eleventh Amendment prevents any suit in federal court "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." **Id.**  The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states.  **Green v. State Bar of Texas**, 27 F.3d 1083, 1087 (5th Cir. 1994) (citing **Port Auth. Trans-Hudson Corp. v. Feeney**, 495 U.S. 299, 304, 110 S. Ct. 1868, 1871 (1990)).  The protection provided by the Eleventh Amendment typically encompasses suits against state officers in their official capacities, like the one at bar, because the claim remains in essence a claim against the state.  **Cox v. City of Dallas,** 256 F.3d 281, 307 (5th Cir. 2001) (citing **Stem v. Ahearn**, 908 F.2d 1, 3 (5th Cir. 1990)).

There is an exception, however, albeit a narrow one.  Under the **Ex parte Young** doctrine**,** suits for prospective injunctive or declaratory relief against state officials acting in their official capacity are permitted when the plaintiff is alleging that the state official is acting in violation of the Constitution or federal law.  **Cox**, 256 F.3d at 307 (citing **Ex parte Young,** 209 U.S. 123, 159-60 (1908)).  In determining whether an **Ex parte Young** claim avoids the immunity offered by the Eleventh Amendment, a court need only conduct a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks

relief properly characterized as prospective. **Verizon Md.**, 535 U.S. at 636 (citing **Idaho v. Coeur d'Alene Tribe of Idaho**, 521 U.S. 261, 296, 298-99, 117 S. Ct. 2028, 2047-48 (1997)). Importantly, the "inquiry into whether [a] suit lies under **Ex parte Young** does not include an analysis of the merits of the claim." **Id.** at 646 (citation omitted). Thus, generally speaking, a prayer for injunctive and/or declaratory relief, requesting that state officials be restrained from acting in contravention of controlling federal law in the future, satisfies the required "straightforward inquiry." **Id** at 636.

Here, Plaintiffs have satisfied the "straightforward inquiry" elucidated in **Verizon**. Specifically, the Plaintiffs have brought suit against all Defendants, in their official capacities, requesting prospective injunctive relief requiring these Defendants to fully implement the LEO provision of PURPA in the State of Texas. The relief requested is properly prospective in nature, in that it seeks to "[r]equire the Texas PUC to implement regulations which give meaningful effect to the Legally Enforceable Obligation Option, as distinct from the Time Of Delivery Option, as defined in 18 C.F.R. § 292.304(d)." Pl.'s Compl. p.12. Thus, the "essential ingredients" of the **Ex parte Young** doctrine are present on the face of Plaintiff's complaint against the Defendants: it is "[1] brought against individual persons [2] in their official capacities as agents of the state and [3] the relief sought [is] declaratory or

21

injunctive in nature and prospective in effect." **Messer v. Meno**, 936 F. Supp. 1280, 1293 (W.D. Tex. 1996).  As such, Defendants' motion to dismiss on the ground of sovereign immunity is properly denied.

From the face of the pleadings, Plaintiff appears to have stated a claim which is not precluded and which is properly before this Court.  After due consideration, the Court finds the following orders should be entered.

It is therefore ORDERED that TNMP's motion to dismiss and the motion to dismiss amended complaint of PRG brought by Defendants Klein, Parsley and Hudson, with respect to the question of implementation of PURPA in the State of Texas be, and they are hereby, DENIED.

It is further ORDERED that TNMP's motion to dismiss and the motion to dismiss amended complaint of PRG brought by Defendants Klein, Parsley and Hudson, with respect to all questions other than implementation of PURPA in the State of Texas be, and they are hereby, GRANTED.

SIGNED AND ENTERED this 18th day of February, 2004.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

22